# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

DOUGLAS E. BARDEN,
Individually and as a Representative of a
Class of Similarly Situated Consumers,

        Plaintiff,

    v.                                Case No. 2:06-cv-00046-LA

HURD MILLWORK COMPANY, INC.,
HURD WINDOWS & DOORS, INC.
f/k/a MONARCH ACQUISITION COMPANY,
HURD WINDOWS & DOORS, INC.,
MONARCH HOLDINGS, INC., and
UIS, INC.,

        Defendants.

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
## FOR CLASS CERTIFICATION

## <u>INTRODUCTION</u>

The plaintiff Douglas E. Barden ("Barden") respectfully moves this Court pursuant to Fed. R. Civ. P. 23 to certify a class action regarding the defendants Hurd Millwork Company, Inc., Hurd Windows & Doors, Inc. ("Hurd") breach of warranty for either of two reasons.

**<u>First</u>**, this Court should grant a class consisting of the following:

> All purchasers of Hurd inert gas-filled insulated glass products (not fitted with breather tubes) in the United States located east of the Continental Divide to the Atlantic shore (excluding specifically those consumers from the states of Washington, Idaho, Montana, Oregon, Utah, Colorado, Arizona, New Mexico, California, Nevada, Alaska, Wyoming, and Hawaii) during the time period that Hurd marketed its inert gas-filled insulated glass products which were covered under

its 1994 warranty effective January 1, 1994, excluding Hurd, its affiliates (including parents, subsidiaries, predecessors, successors and, any other entity or its affiliate which has a controlling interest), its and their current, former, and future employees, officers, directors, partners, members, indemnitees, agents, attorneys, and employees, and its and their assigns and successors.[1]

As will be seen below, despite the multi-state nature of this class, the proposed class passes the Rule 23(a) requirements for certification. Further, under Rule 23(b)(3), the proposed class is otherwise manageable and superior because:

(1) Wisconsin law applies to all class members, since:

    (a) The defendants have conceded that Wisconsin law applies in its Motion to Dismiss in which it urged (successfully) that certain claims were barred under Wisconsin law;

    (b) Wisconsin's choice of law test requires that Wisconsin law apply to the defendants; or

(2) In the alternative, subclasses can be formed to accommodate any minor variations in the 38 jurisdiction's laws regarding breach of warranty.

**Second**, and in the alternative only, this Court could certify a Wisconsin only class. If this Court concludes that a multi-state class action suffers manageability complications, then this Court should minimally certify a Wisconsin-only class for Hurd's breach of warranty. Upon such certification, this Court should further remand this case to the Milwaukee County Circuit Court for further proceedings not inconsistent with this Court's certification order.

---

[1] In other words, this is a 38 jurisdiction breach of warranty class action, comprised of the following jurisdictions: Alabama, Arkansas, Connecticut, Delaware, Florida, Georgia, Illinois, Iowa, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New Hampshire, New Jersey, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Vermont, Virginia, West Virginia, Wisconsin and the District of Columbia.

# BACKGROUND

This action arises from thousands of breaches of an identical form express warranty by defendant Hurd Millwork Company, Inc. ("Hurd").  Hurd was a Wisconsin corporation, organized under and existing by virtue of Wisconsin law.  (Am. Compl. ¶ 2 (Dec. 1, 2005).)  At all times relevant to this action, Hurd's headquarters, manufacturing plant, and principal place of business was located in Medford, Wisconsin.  (Id.)

In approximately 1990, Hurd began manufacturing, marketing, and distributing insulated glass products such as windows and doors filled with colorless, tasteless, and odorless inert gases such as argon and krypton.  (Id. at ¶¶ 23-24, 28-35, 39, 47.)  According to Hurd's promotional materials and marketing campaign, the insulating and energy efficiency qualities of such products are measured in terms of "u-values" and "R-values":

> Better insulation in windows means lower energy costs, and just as important:  your increased comfort on cold winter days.  Insulation performance is measured in "u-values" and "R-values."  The u-value is the actual measure of heat transfer through a window as measured in btu's of energy; therefore a lower u-value means a window is insulating more efficiently.  The R-value is a measure of resistance to heat flow; therefore a higher R-value means better insulation.

(Id. at ¶ 36, ex. 10 at 6, see also id. at ¶¶ 37, 54.)  According to Hurd's promotional materials and marketing campaign, due to the inert gases within them, Hurd's insulated glass products had significantly lower u-values and higher R-values—i.e., better insulating and energy efficiency qualities—than comparable products that were not filled with such gases.  (Id. at ¶¶ 23, 32, 36, 54, 66, ex. 9.)  Given these alleged benefits, Hurd charged a per-square-foot "inert gas premium" for its insulated glass products.  (Id. at ¶¶ 31, 33-35, ex. 8.)

Under a written warranty effective beginning on January 1, 1994, Hurd expressly warranted its insulated glass products, including the inert gases within them:

### LIFETIME LIMITED WARRANTY
**Insulated Glass**
All Hurd insulated glass is warranted to be free from defects in
workmanship and materials for the life of the product.
Years 1-10—100%

. . .

> In the event that the product fails to conform to the foregoing warranties in
> the first ten (10) years, Hurd will repair or replace defective materials with
> another product or part thereof. . . .  If repair or replacement is not
> commercially practicable or cannot be timely made, or if Hurd proposes to
> make a refund instead of repair or replacement and you are willing to accept
> the refund, Hurd will refund your original product purchase price or the
> original Hurd catalog price, whichever is less.

(Id. at ¶ 45, 69, ex. 1.)  Among other things, the alleged u-values of Hurd's insulated glass

products were written on the front of this warranty.  (Id. at ¶ 55, ex. 14.)

Despite Hurd's express representations and warranty, Hurd knew or reasonably

should have known as early as 1987 that its insulated glass products did not retain the inert

gases within them—a fact which given the colorless, tasteless, and odorless nature of the

gases, Hurd knew or reasonably should have known consumers could not reasonably

discover.  (Id. at ¶¶ 25-26, 39-42, 44, 47-48, 59, 61, 64-65, 69-73, ex. 5.)  Nevertheless, Hurd

continued manufacturing, marketing, and distributing its insulated glass products under its

1994 warranty through at least early 1998.  (Id. at ¶¶ 24, 28, 30, 32-36, 42, 45-46.)

From 1994 through at least 1998, Barden and thousands of similarly situated

consumers purchased and installed Hurd's insulated glass products under the 1994 warranty,

thus paying Hurd's "inert gas premium" for those products.  (Id. at ¶¶ 31, 33-35, 43, 53-55,

61, 69, exs. 8, 18; Mark L. Thomsen Aff. ("Thomsen Aff."), ¶ 3)  But because Hurd's

insulated glass products did not retain the inert gases within them, those consumers did not

receive the insulation and energy efficiency benefits they reasonably expected based on

Hurd's express representations and warranty.  (Am. Compl. at ¶¶ 19, 43, 49-50, 59, 66-67,

69-73, ex. 17.) By 1998, Hurd was named as a defendant in at least two civil lawsuits. (Id. at ¶ 15, exs. 2, 4.)[2]

On April 9, 2004, Barden commenced the present action on behalf of himself and the thousands of similarly situated consumers who purchased and installed Hurd's insulated glass products under the 1994 warranty. (Compl. (Apr. 9, 2004).) In doing so, Barden stated a claim for breach of express warranty against Hurd, seeking damages in accordance with the warranty—a "refund [of the] original product purchase price or the original Hurd catalog price, whichever is less."[3] (Am. Compl. ex. 1; Compl. ¶¶ 1-47 and Prayer for Relief ¶ 5.) Barden now respectfully requests that this Court certify the class so the similarly situated consumers in that class may jointly pursue their identical breach of express warranty claims against Hurd.

---

[2] Consumers who purchased Hurd's inert gas-filled insulated glass products in the states west of the Continental Divide received or were entitled to receive Class benefits from settlement of Class Actions filed for, among others, the loss of the inert gas from Hurd's inert gas-filled insulated glass products resulting from Hurd's use of a "breather tube" in all its windows shipped over the divide. (Complaint, ¶13). (The theory there being, among others, that Hurd's use of the breather tube allowed the inert gas to escape rendering the product defective and breaching the warranty.) See, e.g., Joseph Delay v. Hurd Millwork Co., Inc., County of Spokane No. 97 2 07371 0 and Snake River Glass, Inc. v. Hurd Millwork Co., Inc., Blain County Case No. CV 98 5275. (Complaint, ¶13). In the Joseph Delay class action, Hurd reached settlement under which "Defendant Hurd will commit $5.3 million in order to resolve all of the Class Members' damage claims against Hurd arising out of the loss of inert gas in Hurd windows and doors equipped with breather devices." (Complaint, ¶13).

[3] As indicated above, the class seeks compensatory damages constituting a "refund [of the] original product purchase price or the original Hurd catalog price, whichever is less." (Am. Compl. ex. 1.) Alternatively, the class seeks a refund of the premium paid for the inert gas windows. Assuming that this Court grants Barden's present motion for class certification, Barden and the Class Plaintiffs will withdraw any and all other claims asserted in the Amended Complaint for compensatory and punitive damages. That said, any prospect of differing levels of damages among Barden and the Class Plaintiffs clearly does not outweigh the benefit of trying the predominant issues of fact and law common to Barden and the Class Plaintiffs in this single action. See De La Fuente v. Stokley-Van Camp, 713 F.2d 225, 233 (7th Cir. 1983). Indeed, "[i]t is very common for Rule 23(b)(3) class actions to involve differing damage awards for different class members." Id.

## STANDARD OF REVIEW

The determination of whether to certify a class rests with this Court's discretion. Great Neck Capital Appreciation Invest. Partnership v. Price Waterhouse Coopers, 212 F.R.D. 400, 407 (E.D. Wis. 2002). The Seventh Circuit has stated that "Rule 23 must be interpreted liberally. Its policy is to favor maintenance of class actions." King v. Kansas City Southern Indus., Inc., 519 F.2d 20, 25-26 (7th Cir. 1975). This Court must accept the substantive allegations made in plaintiff's complaint as true. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974); Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U. A., 657 F.2d 890 (7th Cir. 1981) (quoting Eisen for the proposition that "nothing in either the language or history of Rule 23 ... gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."). Doubts about whether to grant certification generally are resolved in favor of certification. Day v. Check Brokerage Corp., 240 F.R.D. 414, 417 (N.D. Ill. 2007); Christman v. Brauvin Realty Advisors, Inc., 191 F.R.D. 142, 154 (N.D. Ill. 1999).

## ARGUMENT

## I. CLASS CERTIFICATION IS WARRANTED WITH RESPECT TO THE PROPOSED CLASS BECAUSE ALL RULE 23 CRITERIA ARE SATISFIED.

Class certification is warranted where all four subsections of Rule 23(a) are satisfied—numerosity, commonality, predominance, and adequacy of representation—along with one subsection of Rule 23(b). Paper Sys. Inc. v. Mitsubishi Corp., 193 F.R.D. 601, 604 (E.D. Wis. 2000). As demonstrated below, all Rule 23(a) certification criteria are satisfied along with Rule 23(b)(3), making class certification justified in the present action.

A.      **Rule 23(a) Criteria.**

1.      **Numerosity - The Proposed Class Is Sufficiently Numerous.**

Rule 23 requires first that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(i). Plaintiffs are not required to specify the exact number of persons in the class. Marcial v. Coronet Insurance Co., 880 F.2d 954, 957 (7th Cir. 1989). Nevertheless, in the Seventh Circuit, a case may satisfy the numerosity requirement with a class comprised of as few as forty members. Bzdawaka v. Milwaukee County, 238 F.R.D. 469, 475 (E.D. Wis. 2006); Swanson v. American Consumer Indus., 415 F.2d 1326, 1333 (7th Cir. 1969). Here, the class is so numerous that joinder is impracticable.

This Court will recall that the defendants previously removed this class action from state court under the auspices of the Class Action Fairness Act of 2005. (Decision and Order dated 9/6/06 ("Decision") at 1). In response to this Court's inquiries regarding jurisdiction, a defendant (UIS) submitted an affidavit that represented to the Court the following state's percentage of class members of the proposed 38 jurisdiction class action:

5.      Fewer than one-third of the purported class members are citizens of the states of New York, New Jersey, Iowa and Wisconsin, respectively. I am informed and believe, based on Hurd data regarding sales, that of the total sales of inert gas windows in 1994 through 1998, 18.78% were in Wisconsin, 5.61% in New York, 2.38% in Iowa and .39% in New Jersey.

(Gary Lex Aff. dated 8/29/06, ¶5; Decision at 3).

Given the existence of the sales data of Hurd's inert gas windows from 1994 through 1998, the plaintiff requested this information with the following discovery request:

**All data relating to** Hurd Windows & Doors, Inc. and its predecessor, Hurd Millwork Company, Inc., **sales of Hurd inert gas-filled insulated glass products in various states subject to the Hurd warranty effective on January 1, 1994**, from that date to

- 7 -

present, including but not limited to, all Hurd data regarding sales reflecting that the total sales of inert gas windows **in 1994 through 1998**, 18.78% were in Wisconsin, 5.61% in New York, 2.38% in Iowa and .39% in New Jersey, **and all Hurd data regarding sales of products and warranty at issue in any other state east of the Continental Divide**, again including, but not limited to, any data Gary Lex, Vice President of Administration of defendant Hurd Windows & Doors, Inc. is familiar with as set out in his Affidavit dated August 29, 2006….

(Thomsen Aff., ¶2, Exh. 1).  Hurd responded with a set of spreadsheets for the years 1994-1998 that contain literally thousands of pages of entries[4] for the sales of its inert gas windows, the tally of which is 428,499.[5]  The class in the instant case is too numerous for

---

[4] While the sheer size of this discovery makes it too cumbersome to file with this Court, the following table sums up the data:

| YEAR | TOTAL NUMBER OF SALES ENTRIES |
|---|---|
| 1994 | 65,519 |
| 1995 | 65,528 |
| 1996 | 38,913 |
| 1997 | 151,863 |
| 1998 | 107,186 |
| | 428,499 |

(Thomsen Aff., ¶3).

These entries are illustrative of the class size only for a couple of reasons.  First, these figures are simply the number of entries on the spreadsheets, and some entries noted there were multiple window purchases made.  (Id.).  Second, while the plaintiffs asked only for data regarding **inert gas window sales** at issue in **states** East of the Continental Divide, Hurd included a small fraction of irrelevant data in these numbers, including sales to foreign countries and sales of non-inert gas filled windows merchandise (like golf shirts, aluminum, etc.).  (Id.).  Why Hurd conflated its sales data when it simply makes the class look larger is unknown.

[5] In prior interrogatory responses, Hurd refused to disclose this information:

joiner of all of its members, which consists of Hurd consumers geographically dispersed over 37 states plus the District of Columbia. The size of the class makes joinder impractical and undoubtedly establishes the numerosity requirement of Rule 23(a)(1).

### 2. Commonality - The Class Presents Common Issues Of Law Or Fact.

Rule 23(a)(2) next requires that the action include common questions of law or fact. Majeski v. Balcor Ent. Co., 134 F.R.D. 240, 244 (E.D. Wis. 1991). "Generally, the presence of a single common legal or factual question is sufficient." Andrews v. Chevy Chase Bank, __ F.R.D. __, 2007 WL 112568, *9 (E.D. Wis. 2007). Commonality "generally looks to whether the defendant's conduct is common to class members, rather than to whether the result of the conduct is uniform among class members." Id. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir.1992).

---

**INTERROGATORY NO. 57:** State the total number, or closest approximation thereof, of your inert gas filled products sold east of the Continental Divide and the total number sold to or delivered to each state located east of the Continental Divide.

**ANSWER:** Hurd asserts all applicable General Objections stated above.

Objection vague as to "gas filled products" and "total number" and as to when. Request is incapable of being answered as worded and is not restricted by year or in a manner consistent with alleged Plaintiffs' class. Hurd cannot answer the question as posed.

(Thomsen Aff., ¶4 Exh. 2, Hurd's Answer to Interr. No. 57 dated 2/14/05). When the defendants needed a basis to answer this Court's question of whether it had federal jurisdiction under CAFA, Hurd was apparently able to uncover the relevant information and answer the question.

Common questions of law and fact abound here. This case revolves around the same factual underpinnings, namely, the manufacturing, marketing and distribution of Hurd's inert gas filled products. At the same time, the case also revolves around the same legal claim, breach of warranty. Indeed, the Hurd warranty at issue was simply a standardized document that was identical to all class members and accompanied their purchase of the Hurd products at issue. In this case, these common questions of law and fact are shared by all class members, including the named representative. Accordingly, this case satisfies the commonality requirements of Rule 23(a)(2).

> **3. Typicality – The Proposed Class's Claims Are Typical Because All Breach Of Warranty Claims Arise From the Same Event, Practice, Or Course of Conduct.**

Plaintiff's claims also satisfy the typicality requirement of Rule 23(a)(3) because such claims "arise from the same event, practice or course of conduct, [are] based on the same legal theory; and have the same essential characteristics as those of the potential class members." Rozerna v. Marshfield Clinic, 176 F.R.D. 295, 303 (W.D. Wis. 1997). "Typicalicty does not require a complete identity of claims." Andrews, __ F.R.D. __, 2007 WL 112568, *10. The claims of the class representatives and the rest of the class need not be factually identical. Some factual variation among the claims of the individual class members will not preclude a finding of typicality. Patterson v. General Motors Corp., 631 F.2d 476, 481 (7th Cir. 1980). "Since the claims only need to share the same essential characteristics and need not be identical, the typicality requirement is not highly demanding." Andrews, __ F.R.D. __, 2007 WL 112568, *10.

- 10 -

In the present case, the prosecution of the plaintiff's claims and those of the members of the putative class relate to the same wrongful conduct by defendants and are based on the same legal theory, breach of warranty. As to each aggrieved class member, the plaintiff requests the same relief, damages under the express terms of the warranty. <u>See</u> <u>Bzdawka v. Milwaukee County</u>, 238 F.R.D. at 475. Accordingly, plaintiffs' claims satisfy the typicality requirement of Rule 23(a)(3).

      **4.    Adequacy of Representation - The Class Is Adequately Represented By The Undersigned Counsel.**

The adequacy test is composed of two parts: (1) the adequacy of the named plaintiff's counsel and (2) the absence of conflicting claims among the class representative and other members of the class. <u>Retired Chicago Police Ass'n. v. City of Chicago</u>, 7 F.3d 584, 598 (7th Cir. 1983). Under the first part of the adequacy test, "the plaintiffs' attorney must be qualified, experienced and generally able to conduct the proposed litigation…." <u>Majeski v. Balcor Ent. Co.</u>, 134 F.R.D. 240, 248 (E.D. Wis. 1991).

The plaintiff has no interest antagonistic to those of the class they seek to represent. Indeed, the plaintiff is a victim of the same wrongful conduct as all other class members. He is committed to the vigorous prosecution of this action and has retained co-counsel who are experienced in complex litigation and class actions and have the ability and willingness to protect the interests of the class. (<u>See</u> Thomsen Aff., ¶¶ 5-6; <u>see</u> <u>also</u> Patrick G. McBride Aff.). Accordingly, plaintiff will fairly and adequately protect the interests of the class.

**B.    Rule 23(b)(3) – Common Questions Predominate Over Individual Questions.**

The proposed class action also passes muster under Rule 23(b)(3) because common

questions of law or fact predominate over individual questions and class treatment is a superior method for adjudicating the controversy. Fed.R.Civ.P. 23(b)(3). In this case, question of law or fact predominate over individual questions and a class action is superior to other means of adjudication.

### 1. Common Questions Predominate Over Individual Questions.

The predominant issues in this litigation will be defendants' liability for the breach of warranty. "The primary consideration in assessing predominance is the proof necessary to establish the class members' claims under the applicable substantive law." Great Neck Capital Appreciation, 212 F.R.D. at 408. In this class action, there are two possible scenarios regarding the applicable substantive law: (1) Wisconsin law applies across the board; or (2) subclasses of states with similar laws should be created to accommodate any differences in breach of warranty law.

### a. Wisconsin's Substantive Breach Of Warranty Law Applies To The Entire Class.

Wisconsin's breach of warranty law is generally governed by Wis. Stat. § 402.313. This section provides (as under every other state that has adopted the UCC) as follows:

> Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

Id. Where, as here, there is no question that an express warranty was given (which at a minimum must be assumed for purposes of this motion), a buyer does not have to demonstrate he or she relied on the particular warranty in entering into the contract:[6]

---

[6] It is only where there is a question as to whether a warranty has been given does a buyer have to demonstrate that he or she was induced into the contract because of the warranty. See Ewers v.

> In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; **hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement**. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof. The issue normally is one of fact.

Id., cmmt. 3. Further, while the general rule is that a consumer must give the seller notice of a defect when the seller breaches the warranty, see Wis. Stat. § 402.607, **a consumer does not have to give a seller notice of a defect where the defect is latent**. Waupaca Electric Light and Railway Co. v. Milwaukee Electric Railway & Light Co., 112 Wis. 469, 88 N.W. 308 (1901).

This Wisconsin law applies to this class action because (a) Hurd has not only conceded it applies, it insisted it applied to defeat the class's misrepresentation claim and is now judicially estopped from arguing otherwise, and (b) Wisconsin's contract choice of law principles point to Wisconsin law as the governing law in this action.

### i. All Parties Agree That Wisconsin Law Applies To All Claims In This Matter.

The Hurd defendants have already successfully advocated (and this Court agreed) that Wisconsin law applies to this class action.

---

Eisenzopf, 88 Wis. 2d 482, 488-89, 276 N.W.2d 802 (1979) (whether seller's statement that rock was "suitable for placement in a salt water aquarium" constituted an express warranty). While this distinction is subtle, its ramifications are not. When a seller like Hurd provides a written warranty with its windows that warrants them to be of a particular character for a particular duration, that agreement is woven into the fabric of the contract, and Hurd's breach of that warranty is established irrespective of a buyer's reliance on the warranty.

Back in February 2006, Hurd moved to dismiss the entirety of the plaintiff's putative class action complaint (which alleged breach of warranty, misrepresentation, and rescission), on the grounds that:

> (1) the breach of warranty claim was "barred by the economic loss doctrine under [**the Wisconsin Supreme Court's decisions of] Tietsworth and Kaloti**," (Hurd's Motion To Dismiss at 8);
>
> (2) the misrepresentation claim was barred for failure to provide notice "**[u]nder the Wisconsin Uniform Commercial Code**," (Id. at 8 and 10); and,
>
> (3) the rescission claim was waived **under Wisconsin rescission law**, (Id. at 10-13).

At the defendant's urging, this Court granted in part and denied in part the motion to dismiss as follows. As to the breach of warranty claim:

> Turning to defendants' argument, their contention is that plaintiff's breach of warranty allegations are insufficient because **under Wisconsin law**, notice is a condition precedent to recovery on a breach of warranty claim….. Whether [the plaintiff] has provided defendants with sufficient notice to recover **under Wisconsin law** is not a pleading issue but an evidentiary one, which is appropriately addressed at a later stage of the proceedings.

(Decision at 5 and 6 (emphasis added)). As to the misrepresentation claim:

> Hurd's successors also argue that I must dismiss plaintiff's fraud claim because the economic loss doctrine bars it. **The parties agree that Wisconsin law governs this question.** … [As provided in the Wisconsin Supreme Court's Kaloti decision,] the alleged fraud is interwoven with the contract because it relates to the quality of the goods for which plaintiff contracted.

(Decision at 6 and 7). As to the rescission claim, this Court ruled that "the question of whether plaintiff is entitled to a particular remedy requires the development of a factual record and is not appropriately resolved pursuant to a Rule 12(b)(6) motion." (Decision at 6).

In other words, Hurd has insisted that Wisconsin law applies to this class action, and, on that basis, it was successful in convincing this Court to dismiss the plaintiff's powerful tort claim of fraud and confining the plaintiff's notice requirement on their breach of warranty claim and rescission claim to Wisconsin law. On top of that, it bears noting that all of the unnamed class members are now bound by this determination. In re Bridgestone, 333 F.3d 763, 768 (7th Cir. 2003) (In re Bridgestone II) ("What is more, unnamed class members have the status of parties for many purposes and are bound by the decision whether or not the court otherwise would have had personal jurisdiction over them. Just as they receive the fruits of victory, so an adverse decision is conclusive against them.").

As a result, the defendants are now judicially estopped from arguing that anything other than Wisconsin law applies to this class action.[7] As summed up by the United States Supreme Court:

> Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.

New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (quotation omitted). The Seventh Circuit recently captured the doctrine as follows: "The doctrine of judicial estoppel prevents a party from adopting a position in a legal proceeding contrary to a position successfully argued earlier by that party in a legal proceeding." Feldman v. American Memorial Life Ins.

---

[7] Although this Court typically applies the procedural law of the state in which it sits, judicial estoppel is a matter of federal law and federal judicial estoppel law controls. Commonwealth Ins. Co. v. Titan Tire Corp., 398 F.3d 879, 887 n.6 (7th Cir. 2004).

Co., 196 F.3d 783, 790 (7th Cir. 1999); Ogden Martin Systems of Indianapolis, Inc. v. Whiting Corp., 179 F.3d 523, 527 (7th Cir. 1999) ("Judicial estoppel serves to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories."). The doctrine has been applied where a party attempts to take inconsistent stances with respect to dismissing counts in a complaint. See also Moriarty v. Svec, 233 F.3d 955, 963 (7th Cir. 2000) (where party successfully argued particular legal doctrine barred a count in the complaint, party could not argue to the contrary with respect to other counts in the complaint).

As such, because Hurd has already successfully advocated that Wisconsin law applies to this class action, Hurd is judicially estopped from now asserting a "contrary position." See Feldman, 233 F.3d at 790. This class is therefore governed by Wisconsin law, and the commonality and predominance requirements of Rule 23 are easily established.

> ### ii. Under Wisconsin Choice Of Law Principles, Wisconsin Law Applies To All Claims In This Matter.

Alternatively, Wisconsin law applies to this class action due to Wisconsin's choice of law principles for contract disputes.

### 1. Wisconsin's UCC Choice of Law.

The plaintiff's contract claims stem from state law, so this Court must apply choice of law principles from the state in which the federal court sits, Wisconsin. In re Bridgestone/Firestone, 288 F.3d 1012, 1015 (7th Cir. 2002). Critically, Wisconsin **is not** a *lex locus delicti* state with respect to UCC contract disputes. Compare In re

<u>Bridgestone/Firestone</u>, 288 F.3d at 1016;[8] <u>with</u> Wis. Stat. § 401.105(1). Rather, Wisconsin applies an "appropriate relations" test where multiple states' laws are at issue. Wis. Stat. § 401.105(1). Under this test, Wisconsin UCC law applies to all "transactions bearing an appropriate relation to this state." <u>Id.</u>

Wisconsin courts have construed "appropriate relations" as existing where "the point of manufacture and shipping of [goods]" occurs. <u>Ford Motor Co. v. Lyons</u>, 137 Wis. 2d 377, 397, 405 N.W.2d 354 (Ct. App. 1987) ("Regardless of the elements of the test, we conclude that the [contract] transaction bears a reasonable relation to or has significant contacts with Michigan because it is the point of manufacture and shipment of the vehicles."). Here, Hurd has admitted it placed its inert gas-filled windows into commerce throughout the United States from its manufacturing plants in Wisconsin. (Amended Complaint, ¶¶2, 24, Exh. 6 Ans.No.22; Hurd's Answer, ¶¶2, 24). Wisconsin, therefore, undoubtedly bears an "appropriate relation" to all contracts and therefore Wisconsin law applies. <u>See</u> <u>Ford Motors Co.</u>, 137 Wis. 2d at 397.

### 2. Wisconsin's Common Law Choice Of Law.

Wisconsin law also applies to this class action as a matter of common law choice of law principles. Under the common law, Wisconsin **is not** a *lex locus delicti* state with respect to contract disputes. <u>Compare</u> <u>In re Bridgestone/Firestone</u>, 288 F.3d at 1016; <u>with State Farm Mut. Auto. Ins. Co v. Gillette</u>, 2002 WI 31, ¶26, 251 Wis. 2d 561, 641 N.W.2d 662. Rather, in contract disputes, Wisconsin applies two interchangeable tests.

---

[8] Given this critical distinction, the defendants anticipated reliance on <u>In re Bridgestone/Firestone</u>, 288 F.3d 1012 (7th Cir. 2002), will be entirely misplaced. That case involved a different set of choice of law principles, rendering that decision of no value here.

The first test is the "grouping of contacts" rule. Under this rule, "contract rights must be 'determined by the law of the [jurisdiction] with which the contract has its most significant relationship.'" Gillette, 251 Wis. 2d 561, ¶26. To determine which state has the most significant contact, a court must evaluate:

1. The place of contracting;

2. The place of negotiating the contract;

3. The place of performance;

4. The location of the subject matter of the contract; and

5. The place of business and place of incorporation of the parties.

Haines v. Mid-Century Ins. Co., 47 Wis. 2d 442, 446, 177 N.W.2d 328 (1970). The purpose of this analysis "is not to count contacts but rather to consider which contacts are most significant and to determine where those contacts are found. Id. at 447.

The second test is a generalized factors test that considers:

1. Predictability of results;

2. Maintenance of interstate and international order;

3. Simplification of the judicial task;

4. Advancement of the forum's governmental interests;

5. Application of the better rule of law.

Schossler v. Allis-Chalmers Corp., 86 Wis. 2d 226, 240, 271 N.W.2d 879 (1978). Under either test, Wisconsin law surely applies to this action.

### (i) "Grouping of Contacts Test."

Under the first test, while no Wisconsin case has applied the "grouping of contacts" tests to class actions, the very recent case of Ysbrand v. Daimler Chrysler Corp, 81 P.3d 618

(Okla. 2003), did so and concluded that a single state's law (Michigan law) applied to a 51 jurisdiction (all 50 states plus the District of Columbia) breach of warranty class action. That case concerned breach of warranty revolving around airbag failures in Chrysler minivans. The minivans were manufactured in Michigan, which was also the manufacturer's principle place of business. The trial court certified a nationwide class for breach of warranty, determining that Michigan law applied uniformly to all class members in all 51 jurisdictions. The manufacturer appealed, arguing it was nonsensical to apply Michigan law to all jurisdictions. The Okalahoma Supreme Court recognized that all states had an interest in the class action, but the question was whether these states' interests outweighed that of the minivan manufacturer's principle place of business, Michigan, and the place where the minivans were designed, manufactured, and distributed. <u>Id.</u> at 625. The court held they did not.

The court recognized the obvious truth that "the place of contracting, the place of negotiation and performance, and the location of the subject matter are of diminished significance to the sale of the minivans. The UCC warranties are not something which is negotiated in the purchase of a new car." <u>Id.</u> at 625. Thus, each state's interest was "more or less equal." <u>Id.</u> By contrast, "Michigan's interests in having its regulatory scheme applied to the conduct of a Michigan manufacturer is most significant" because:

> Michigan is where the decisions concerning the design, manufacture, and distribution of the minivans were made. Michigan is the only state where conduct relevant to all class members occurred. The principal place of DaimlerChrysler's business is the most important contact with respect to the UCC warranty claims.

<u>Id.</u> at 626. Further, on a broader plane:

> The needs of the interstate system and the basic policies of predictability and uniformity of result require that the issue of product defect be determined in one forum with one result rather than in 51 jurisdictions with the very real possibility of conflicting decisions. While the interest of each home state in applying its local law is significant, Michigan's interest in the conduct of its manufacturer, and thus its connection to the warranty issues, is greater. Michigan law applies.

Id.

Ysbrand's analysis is equally applicable and particularly compelling here. As was the case there, the place of contracting, the place of negotiation and performance, and the location of the subject matter of the warranty here are all of marginal value because consumers did not "bargain" for Hurd's standardized warranty, meaning that all states have more or less an equal interest in applying their laws. However, all the relevant conduct—from Hurd's place of incorporation and principle place of business, to the manufacture and distribution of its windows, to the issuance and enforcement of its warranty—occurred in a single state: Wisconsin. See Ysbrand, 81 P.3d at 626. Thus Wisconsin is particularly interested in enforcing the basic policies of "predictability and uniformity" in the conduct of its manufacturer, Hurd. See id. Wisconsin law bears the most significant relationship to the warranty claim and therefore it applies under the grouping of contacts test.

### (ii)  Common Law Factor Test.

Under the second test, the closely analogous case of Schossler v. Allis-Chalmers Corp., 86 Wis. 2d 226, 271 N.W.2d 879 (1978), is instructive. There, the Wisconsin Supreme Court applied the second choice of law test and concluded that Wisconsin law applied to a 21-state breach of retirement-benefit contract class action. Schossler involved a multi-state company's revocation of its promise to provide free life insurance to its retired employees.

The retired employees commenced a 21 state class action in Wisconsin, and the trial court certified the class and determined that Wisconsin law applied to the entire class. The company appealed, arguing the trial court erred in applying Wisconsin law across the board. Applying the second choice of law test, the Wisconsin Supreme Court disagreed:

> The record demonstrates that some members of the plaintiff class worked and retired in states other than Wisconsin. **However, the company policy decision to provide these benefits for nonunion, salaried employees was a home office decision emanating from Wisconsin. Public policy favoring the honoring of reasonable expectations requires that the implementation of the policy be uniform throughout the multistate [company] complex. It is reasonable to assume that each employee expected the home office to treat all employees of [the company], wherever located, uniformly. The representation of free insurance and the decision to change the plan were made in Wisconsin. Thus predictability of result and maintenance of interstate order strongly favor application of Wisconsin law. Surely the judicial task is simplified by applying the law of a single forum to this controversy.** It is evident from our discussion below that we believe the rule we choose to apply under Wisconsin law is the better rule, promoting established state interests in enforcing the legitimate expectations of workers under retirement plans and ensuring that employers treat retired employees fairly. We observe finally that the defendant has simply not shown any persuasive reason to displace the law of the forum.

Id. at 240-41 (emphasis added).

The Schossler application of Wisconsin's common law choice of law test applies equally here. As in Schossler, Hurd's decision to provide the warranty was a home office decision emanating from Wisconsin. See id. Thus, "[p]ublic policy favoring the honoring of reasonable expectations requires that the implementation of the policy be uniform throughout" the 37 states applicable here. See id. at 241. Also, Hurd's representation that the windows retained the inert gas was made and originated in Wisconsin. See id. "Thus predictability of result and maintenance of interstate order strongly favor application of

Wisconsin law." <u>See</u> <u>id.</u> And, it goes without saying that "[s]urely the judicial task is simplified by applying the law of a single forum to this controversy." <u>See</u> <u>id.</u> Perhaps most importantly, applying Wisconsin law promotes this state's interest in enforcing the legitimate expectations of consumers and ensuring that domestic companies treat its consumer fairly. <u>See</u> <u>id.</u> Consequently, even under Wisconsin's common law choice of law test, Wisconsin law applies to this class action. <u>See also</u> <u>Szabo v. Bridgeport Machines, Inc.</u>, 249 F.3d 672, 674 (7th Cir. 2001) (in breach of warranty class action, while denying class certification, suggesting that where representations are made or approved by a manufacturer, the manufacturer's home state's law can apply to entire class).

Therefore, the proposed class in the present action easily passes the Rule 23(b) predominance test, as the uniformity in applying Wisconsin law streamlines the contested issues of fact, if any.

> **b.    Alternatively, This Court Should Group The States With Similar Laws To Form Manageable Subclasses.**

If Wisconsin law does not apply uniformly to the proposed class (which it does), then this Court should nonetheless carve the proposed class into manageable subclasses. Rule 23(c)(4) specifically allows the creation of subclasses, and

> classes have been certified in cases where multiple classes were required. <u>See</u>, <u>e.g.</u>, <u>Keele v. Wexler</u>, 149 F.3d 589 (7th Cir.1998). The fact that Rule 23 provides for subclasses when they are efficient makes it clear that the existence of multiple classes, in and of itself, is not sufficient to justify [a] district court's denial of class certification.

<u>Williams v. Chartwell Financial Services, Ltd.</u>, 204 F.3d 748, 760 (7th Cir. 2000).

As suggested above, *infra* I.B.1.a., two possible concepts in breach of warranty class actions concern (1) whether a buyer has to rely on a warranty to bring a breach of warranty

action; and (2) whether and how a buyer gives notice to a seller of a defect. Neither notion of itself prevents certification of subclasses. See Riordan v. Smith Barney, 113 F.R.D. 60, 65 (N.D.Ill.1986) ("It is well established that individual issues of reliance do not thwart class actions.").

With respect to reliance, some jurisdictions discuss that the buyer rely on a warranty before the buyer can maintain a breach of warranty cause of action, while others do not. With respect to notice, some jurisdictions discuss that a buyer provide notice of a defect before commencing a lawsuit, while others do not. Based on the plaintiff's 38 jurisdiction survey on breach of warranty law, the following four simple subclasses can be created to manage this class:

**Subclass #1:** **Reliance necessary, pre-litigation notice necessary.** A single jurisdiction says that a buyer of goods must rely on the warranty to maintain a cause of action for breach of warranty and provide notice of a defect to the seller prior to commencing a lawsuit. This jurisdiction is South Dakota:

*TABLE NO.1*

| STATE | RELIANCE | NOTICE OF DEFECT |
|---|---|---|
| **(1) South Dakota** | YES.<br><br>James River Equipment Co. v. Beadle County Equipment, Inc. 646 N.W.2d 265, 269 (S.D. 2002) ("The UCC … [is] consistent with the common law principle which provided that the seller who affirms any fact or makes any promise concerning the goods which he or she is selling makes an express warranty, if the buyer, relying on that affirmation or promise, is induced to buy the goods."). | YES.<br><br>Hepper v. Triple U Enterprises, Inc., 388 N.W.2d 525, 529 (S.D. 1986) ("Notice of breach by summons and complaint is obviously insufficient since it clearly frustrates the purposes of timely notice, discussed above."); Brookings Mun. Utilities, Inc. v. Amoco Chemical Co., 103 F.Supp.2d 1169, 1177 (D.S.D. 2000) ("While plaintiffs claim that defendants knew about defects in Techite pipe from problems with other buyers, a seller's actual knowledge of defects does not excuse a buyer from providing notice of breach."). |

**Subclass #2: Reliance necessary, pre-litigation notice <u>NOT</u> necessary.** A larger grouping of jurisdictions still state that the buyer of goods rely on the warranty to maintain a cause of action but hold that pre-litigation notice to the seller of the defect is not necessary for any number of reasons, all of which apply here. These jurisdictions include:

*TABLE NO. 2*

| STATE | RELIANCE | NOTICE OF DEFECT |
|---|---|---|
| **(2) Iowa** | **YES.**<br><br>Moore v. Vanderloo, 386 N.W.2d 108, 112 (Iowa 1986) ("Further, section 554.2313(1)(a) states that the express warranty must serve as part of the "basis of the bargain". There is no evidence under this record that Moore read or relied on any of Palmer's informational material.") | **NO**, notice need not be given to manufacturer.<br><br>McKnelly v. Sperry Corp., 642 F.2d 1101, 1107 (8th Cir. 1981) ("However, we are not persuaded the Iowa Supreme Court would, under all the circumstances here, hold the notice provision of the Uniform Commercial Code applicable to McKnelly's suit. By its terms, Section 2-607(3)(a) applies only to a buyer who has accepted tender of goods from a seller. It does not expressly apply as between an injured third person other than the buyer and a manufacturer instead of a seller. The official comments to the notice provision state that a beneficiary does not fall within the reason of the section in regard to discovery of defects and giving of notice within a reasonable time."). |
| **(3) Maine** | **YES.**<br><br>Maine Farmers Exch. v. McGillicuddy, 697 A.2d 1266, 1268 (Me. 1997) ("[T]he requirement that the affirmation become part of the "basis of the bargain" is meant to continue the uniform sales act requirement that the purchaser must show reliance on the affirmation in order to make out a cause of action for a breach of | **NO**, lawsuit suffices, and unnecessary where actual knowledge.[9]<br><br>Muehlbauer v. General Motors Corp., 331 F.Supp.2d 847, 857-59 (N.D. Ill. 2006) (construing Maine law) ("Section 2-607(3)(a) has not been subject to extensive analysis by Maine courts. … Remedies provided under Maine's commercial code are to be "liberally administered." 11 MRS § 1-106(1). Further, as noted above, the notice requirement is not meant, and |

---

[9] As the plaintiffs' complaint makes clear, Hurd has been on actual notice of the defective nature of its windows for some time now. <u>See</u> Background, *infra*.

| | | |
|---|---|---|
| | warranty."). | should not function, to deprive a consumer of a remedy. Section 2-607 cmt. 4. … Here, plaintiffs have alleged that defendant had ample pre-suit notice of the alleged ABS sensor defect. Paragraphs 28 through 75 of the complaint set forth in detail consumer complaints, investigation by Transport Canada, and defendant's Canadian recall. Transport Canada specifically informed defendant that the braking malfunction could potentially affect "every vehicle where corrosion is a factor." (CAC, ¶ 34). Defendant also knew that Transport Canada considered the problem to be the result of "a gross shortcoming in the design of the system." (¶ 29(e); see also ¶ 60). Plaintiffs allege that defendant had received complaints since at least 1999 (¶ 52). And they further allege that defendant had in its possession consumer complaints, surveys, analyses, and other test data (¶ 79). Taken together, plaintiffs have alleged that defendant was well aware of the problem affecting their vehicles. From this notice, a fact-finder could infer that defendant was afforded sufficient opportunity to investigate the defect, devise a cure, and prepare for any necessary negotiation or settlement. … We agree with … courts' analyses that notice by complaint meets the stated goals of section 2-607. Stale claims could easily be disposed of on statute of limitations grounds; the filing of the complaint crystalizes the alleged problem by identifying plaintiffs and fleshing out details of the breach; and the initiation of litigation provides additional incentives for settlement. But we are not presented with allegations that require us to opine whether notice by complaint is per se insufficient or that a complaint will always provide sufficient notice. Here we have determined that defendants had ample notice prior to the complaint, and the complaint further satisfies section 2-607's policies…."). |
| **(4) Minnesota** | **YES.**<br><br>Alley Constr. Co. v. Minnesota, 219 | **NO**, unnecessary when the defendant has actual knowledge. |

| | | |
|---|---|---|
| | N.W.2d 922, 925 (Minn. 1974) (approving the following jury instruction: "In order to recover for breach of warranty, the Plaintiff has the burden of proving by a fair preponderance of the evidence the following elements: Number One. That there was a warranty, or a representation, either express or implied, in the terms of the contract; Number Two. That the warranty, or representation, concerned a material fact; Number Three. That the Plaintiff relied on that warranty, or representation, and was induced thereby to bid on the contract; Number Four. That his reliance was reasonable under the circumstances; and, finally, Number Five. That the representation was not true and as a result the Plaintiff suffered damages as a consequence of that breach."). | Church of the Nativity of Our Lord v. WatPro, Inc., 491 N.W.2d 1, 5 (Minn. 1992), overruled on other grounds by Ly v. Nystrom, 615 N.W.2d 302 (Minn. 2000) ("The notice provision [of Minn. Stat. § 336.2-607(3)(a)] is not intended to operate as a technical procedural barrier to deny claimants the opportunity to litigate the case on the merits. Where the record discloses prior knowledge of similar complaints, the defendant will already have investigated the possible causes and therefore cannot argue that it is prejudiced by any delay in receiving notice of the specific complaint." (quotation and citations omitted)). |
| **(5) Rhode Island** | **YES.** <br><br> Thomas v. Amway Corp., 488 A.2d 716, 720 (R.I. 1985) ("The plaintiff who claims breach of express warranty has the burden of proving that the statements of representations made by the seller induced her to purchase that product and that she relied upon such statements of representations."). | **NO,** lawsuit suffices. <br><br> DiPetrillo v. Dow Chemical Co., 729 A.2d 677, 682 (R.I. 1999) (where consumer cannot discover the defect and where manufacturer can do nothing to correct the defect, "we hold that the filing of the complaint constituted sufficient notice of the breach of the implied warranty."). |
| **(6) South Carolina** | **YES.** <br><br> SC-JICIV 32-33 ("Before liability on a theory of express warranty can be imposed on a defendant in a products liability case, the plaintiff must establish the following elements "(1) an affirmation of fact or a promise by the seller; (2) the natural tendency of the affirmation or promise was to induce | **NO,** unnecessary for latent defects.[10] <br><br> S.C. Code Ann. § 36-2-607 cmmt ("Subsection (3)(a) states the common law rule that the buyer must communicate his rejection to the seller within a reasonable time after he discovers or should have discovered the defect. Failing this, the buyer will have waived the remedies for breach recognized as available to him by subsection (2). The waiver does not apply |

---

[10] As the plaintiffs" complaint makes clear, the defective windows were purportedly filled with an odorless, colorless, tasteless gas. No reasonable person could detect this gas leaking from the windows. See Background, *infra.*

| | the buyer to purchase the goods;<br>(3) such affirmation of fact or promise became a part of the basis of the bargain;<br>(4) the buyer purchased the goods in reliance thereon;<br>(5) a breach of the express warranty by the seller; and<br>(6) the breach proximately caused injury to the plaintiff.”). | to the buyer under present case law nor this Commercial Code rule where the defect was not discoverable by ordinary inspection.”).<br><br>**NO**, unnecessary where seller has actual knowledge.<br><br><u>Seaside Resorts, Inc. v. Club Car, Inc.</u>, 416 S.E.2d 655, 664 (S.C. Ct. App. 1992) (“[I]f the seller is aware the buyer may claim a breach of warranty with respect to the goods prior to the buyer’s formal assertion of the claim, the reason for notification has been satisfied. This is simply a specific instance of the general principle that notice is not required to a party who already has knowledge of a fact giving rise to a claim.”). |

Subclass #3: Reliance <u>**NOT**</u> necessary, pre-litigation notice necessary.   A slightly smaller subset of jurisdictions state that reliance on a warranty is not a prerequisite to a breach of warranty action, while providing notice of the defect before commencing a lawsuit is noted.  These jurisdictions include:

*TABLE NO. 3*

| STATE | RELIANCE | NOTICE OF DEFECT |
|---|---|---|
| **(7) Alabama** | NO.<br><br><u>Massey-Ferguson, Inc. v. Laird</u>, 432 So. 2d 1259, 1261-62 (Ala. 1983) (“As this court perceives it, the determining factor in this case under the newly enacted Uniform Commercial Code is not reliance by the purchaser on the seller’s warranty, but whether it is part of the ‘basis of the bargain.’  In fact, it is not necessary to show any particular reliance by the buyer to give rise to such warranties. . . .  Official Comment 3 to § 7-2-313 provides:  ‘In actual practice affirmations of fact made by the seller about the goods during a | YES.<br><br><u>Parker v. Bell Ford, Inc.</u>, 425 So.2d 1101, 1103 (Ala. 1983) (rejecting claim that summons and complaint satisfied notice requirement). |

| | | |
|---|---|---|
| | bargain are regarded as part of the description of those goods; hence *no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement.*'" (emphasis in original)). | |
| **(8) Arkansas** | **NO.**<br><br>Ark. Code Ann. § 4-2-313 cmmt. 3 ("The present section deals with affirmations of fact by the seller, descriptions of the goods or exhibitions of samples, exactly as any other part of a negotiation which ends in a contract is dealt with. No specific intention to make a warranty is necessary if any of these factors is made part of the basis of the bargain. In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement."). | **YES.**<br><br>Williams v. Mozark Fire Extinguisher Co., 888 S.W.2d 303 (Ark. 1994) (noting that had previously "affirmed a directed verdict in favor of the defendant because the giving of notice was not alleged in the complaint. We have additionally stated that the notice must be more than a complaint. Thus, under the statute, Williams failed to give proper notice by the filing of her second amended complaint.").<br><br>Kohlenberger, Inc. v. Tyson's Foods, Inc., 510 S.W.2d 555, 561 (Ark. 1974) ("We have held that notification of a breach of warranty is a condition precedent to recovery which must be pleaded. Since in order to recover for more than is allowed for breach of warranty where the goods are accepted, a plaintiff buyer must prove that there was an effective rejection or revocation and notification is essential before either is effective, he must plead notification, prior to the filing of suit, of one or the other, as a condition precedent just as required in case of breach of warranty." (citation omitted)). |
| **(9) Illinois** | **NO.**<br><br>Alan Wood Steel Co. v. Capital Equipment Enterprises, Inc., 349 N.E.2d 627, (Ill. Ct. App. 1976) ("Under this paragraph, the buyer need not place "particular reliance" on seller's affirmations in order for those affirmations to be considered part of the basis of the bargain; however, significant reliance by the buyer on his examination of the product before the deal is completed may indicate that buyer's lack of reliance on seller's | **YES**.<br><br>Connik v. Suzuki Motor Co., 675 N.E.2d 584, (Ill. 1996) ("Thus, even if a manufacturer is aware of problems with a particular product line, the notice requirement of section 2-607 is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer. … [W]here the breach has not resulted in personal injury, the UCC indicates a preference that the breach be cured without a lawsuit. Since the instant |

| | affirmations or descriptions preclude the creation of an express warranty."). | plaintiffs did not allege that they suffered any personal injuries as a result of the Samurai's alleged rollover risk, the section 2-607 notice requirement was not fulfilled by filing a breach of warranty complaint."). |
|---|---|---|

**Subclass #4: Reliance _NOT_ necessary, pre-litigation notice _NOT_ necessary.**

By far, the largest subclass consists of the majority of jurisdictions that have held that a buyer need not rely on the warranty to maintain a breach of warranty claim and that pre-litigation notice of a defect is not necessary to commence litigation. The following table outlines theses cases. After the table, the plaintiff identifies the jurisdictions whose highest courts have yet to decide whether pre-litigation notice is necessary to maintain a breach of warranty claim and then demonstrate why this Court should conclude that these jurisdictions will conclude that pre-litigation notice is not necessary because this represents the better rule.[11] See Taco Bell Corp. v. Continental Casualty Co., 388 F.3d 1069, 1077 (7th Cir.2004). ("The duty of a federal court in a diversity suit is to predict what the state's highest court would do if presented with the identical issue."). First, the table of jurisdiction and cases:

_TABLE NO. 4_

| STATE | RELIANCE | NOTICE OF DEFECT |
|---|---|---|
| **(10) Connecticut** | **NO**.<br><br>Conn. Gen. Stat. § 42a 2 313 cmt. 3 ("No specific intention to make a warranty is necessary if any of these factors is made part of the basis of the bargain. In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of | **NO,** unnecessary where consumers do not buy directly from manufacturer,<br><br>Spencer v. Star Steel Structures, Inc., 900 A.2d 42, 45 (Conn. Ct. App. 2006) ("The only party entitled to notice under the statute is "the seller" of the goods. Because [the manufacturer] concededly was not the seller of the goods to [the consumer], its liability is unaffected by § |

---

[11] Plaintiffs recognize that some of the jurisdictions contained in Table No. 4 also are not cases from their respective highest courts. However, these cases are included as they represent the better rule. See, supra, 40-42.

| | | |
|---|---|---|
| | those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement."). | 42a-2-607(3).").<br><br>**NO,** unnecessary for consumer actions.<br><br><u>Ruderman v. Warner-Lambert Pharmaceutical Co.</u>, 184 A.2d 63 (1962) ("'This is not an action by a buyer against a seller. It is an action by a consumer against the manufacturer... for breach of implied warranty of the wholesomeness of its product, which product was purchased by the consumer from a retailer. [The notice statute] does not apply.' "). |
| **(11) Georgia** | **NO.**<br><br>Ga. Code Ann. § 11-2-313 cmt. 3 ("In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement."). | **NO,** unnecessary where seller suffers no prejudice from lack of notice<br><br><u>Wal-Mart Stores, Inc. v. Wheeler</u>, 586 S.E.2d 83, 86 (Ga. Ct. App. 2003) ("The comments to the UCC specifically state that the notice provision found in § 2-607 is not intended to deprive a good faith consumer of his remedy. And, as it has been said, 'an injured lay consumer has no reason to know, until he consults a lawyer, that under the terms of the Uniform Commercial Code he is required to give the seller notice that the item sold was not satisfactory.' We therefore conclude that delay alone without prejudice caused by such delay is insufficient to bar relief to the plaintiff under OCGA § 11-2-607(3)(a).). |
| **(12) Indiana** | **NO.**<br><br><u>Shambaugh v. Lindsay</u>, 445 N.E.2d 124, 126-27 (Ind. Ct. App. 1983) ("The problems of a reliance, and a right to rely, on the representations do not appear when the action is grounded in warranty. The warranty is as much a part of the contract as any other part, and the right to damages on the breach depends on nothing more than the breach of warranty."). | **NO,** unnecessary where seller has actual notice of defect.<br><br><u>Agrarian Grain Co., Inc. v. Meeker</u>, 526 N.E.2d 1189, 1193 (Ind. Ct. App. 1988) ("However, the notice required by IC 26-1-2-607(3)(a) is satisfied by the buyer's actual knowledge there are some problems with the goods."). |
| **(13) Kansas** | **NO.** | **NO,** lawsuit suffices. |

| | | |
|---|---|---|
| | _Young & Cooper, Inc. v. Vestring_, 521 P.2d 281, 291 (Kan. 1974) ("An express warranty by definition in 84-2-313(1)(a), supra, makes it contractual and particular reliance upon the express warranty need not be shown.") | Kan Stat. Ann. § 84-2-607 cmmt 4 ("The courts construe the notice requirement in light of these underlying policies. Thus, the courts do not apply the notice requirement as strictly in cases involving consumers as in commercial cases, particularly when the lack of notice did not prevent cure of nonconformity or otherwise prejudice the defendant (such as in preparing for litigation." (_citing_ _Smith v. Stewart_, 667 P.2d 358, 363 (1983) (filing a complaint is sufficient for providing notice), and _City of Wichita v. United States Gypsum Co._, 828 F.Supp. 851, 857-58 (D. Kan 1993), _aff'd in part and rev'd in part on other grounds_, 72 F.3d 1491 (10th Cir. 1996) (same)). |
| **(14) Kentucky** | **NO.**<br><br>_Moore v. Mack Trucks, Inc._, 40 S.W.3d 888, 891 (Ky. Ct. App. 2001) ("Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. Appellant alleges that Caudill's statements formed a basis of the bargain. We believe that his statements regarding the overhaul of the transmission could be construed as an affirmation of fact relating to the truck."). | **NO**, lawsuit suffices.<br><br>_Mullins v. Wyatt_, 887 S.W.2d 356, 358 (Ky. 1994) ("[A]n opportunity for pre-litigation settlement is simply insufficient to justify holding claims for breach of warranty without pre-litigation notice to be barred, particularly when proponents of the requirement acknowledge that it could be met by a mere telephone call immediately before the suit is filed. … With respect to KRS 355.2-607, there is simply an insufficient basis in text or in logic to require peremptory application of a pre-litigation notice rule. When this is considered beside what may be good and valid reasons in a proper case to refrain from pre-litigation notice, it must follow that failure to give the notice is not fatal to a civil action for breach of warranty."). |
| **(15) Louisiana** | **NO.**<br><br>_Mire v. EatelCorp, Inc._, 849 So.2d 608, 614-15 (La .Ct. App. 2003) | **NO**, failure to give notice limits damages only if defect could have been repaired earlier. |

| | | |
|---|---|---|
| | ("According to plaintiffs, the inquiry under a redhibition[12] claim does not involve the buyer's subjective knowledge or reliance, but rather is an objective inquiry into the deficiency and whether it diminishes the product's value or renders it so inconvenient that the reasonable buyer would not have purchased it had he known of the deficiency. We agree."). | Pellegrin v. City of Thibodaux, 837 So.2d 139, 141 (La. Ct. App. 2002) ("LSA-C.C. art. 2522 provides that a buyer must give the seller notice of the existence of a redhibitory defect within sufficient time to allow the seller the opportunity to make the required repairs. "A buyer who fails to give that notice suffers diminution of the warranty to the extent the seller can show that the defect could have been repaired or that the repairs would have been less burdensome, had he received timely notice." LSA-C.C. art. 2522. Although the failure to give notice limits the remedies available to the buyer, it clearly does not prevent the filing of a lawsuit by the buyer."). |
| **(16) Maryland** | **NO.** Md. Code Ann.., Com. Law § 2-313 cmt. 3 ("No specific intention to make a warranty is necessary if any of these factors is made part of the basis of the bargain. In actual practice affirmations of fact made by the seller about the goods during a bargain are | **NO**, notice unnecessary to manufacturer. Firestone Tire & Rubber Co. v. Cannon, 452 A.2d 192 (Md. Ct. Spec. App. 1982), aff'd, 456 A.2d 930 (Md. 1983) (holding "no" to the following question: "Does Md. Code Ann., Comm. Law art. § 2-607(3)(a) require a buyer to give notice |

---

[12] A "redhibition claim" is essentially a claim for damages from a defect product. LSA-C.C. Article 2520, titled "Warranty against redhibitory defects," states:

> The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
>
> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
>
> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

With its distinct "civil law" history, as opposed to English "common law," Louisiana is the only state here that has not adopted Article 2 of the UCC governing sales.

| | | |
|---|---|---|
| | regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement."). | of a claimed breach of implied warranty to a 'remote' seller—someone in the marketing chain other than the person from whom he bought the goods?"). |
| **(17) Massachusetts** | **NO.**<br><br>Mass. Gen. Laws ch. 106, § 2-313 cmt. 3 ("No specific intention to make a warranty is necessary if any of these factors is made part of the basis of the bargain. In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement."). <u>But see</u> <u>Fahey v. R.J. Reynolds Tobacco Co.</u>, 4 Mass. L. Rptr. 21 (Mass. Super. Ct. June 12, 1995) (adopting a rebuttable presumption that the plaintiff relied upon any affirmation of fact or promise about he was aware). | **NO,** unless the defendant can prove prejudice due to lack of notice.<br><br>Mass. Gen. Laws ch. 106, § 2-318 ("Lack of privity between plaintiff and defendant shall be no defense in any action brought against the manufacturer, seller, lessor or supplier of goods to recover damages for breach of warranty, express or implied, or for negligence, although the plaintiff did not purchase the goods from the defendant if the plaintiff was a person whom the manufacturer, seller, lessor or supplier might reasonably have expected to use, consume or be affected by the goods. The manufacturer, seller, lessor or supplier may not exclude or limit the operation of this section. Failure to give notice shall not bar recovery under this section unless the defendant proves that he was prejudiced thereby. All actions under this section shall be commenced within three years next after the date the injury and damage occurs."); <u>Henrick v. Coats Co., Inc.</u>, 458 N.E.2d 773, 775 (Mass. App. Ct. 1984) ("General Laws c. 106, § 2-318, is explicit that the burden is on the defendant to prove prejudice in cases such as the present, in which there was no notice of any breach of warranty prior to the commencement of the action. Accordingly, there was error (seasonably objected to) in the instruction that the plaintiff had the burden of proving that "there was no prejudice to the defendant for the lack of notice."). |
| **(18) Missouri** | **NO.**<br><br><u>Interco, Inc. v. Randustrial Corp.</u>, 533 S.W.2d 257 (Mo.Ct.App.1976) ("There is no mention of reliance in s | **NO,** knowledge of defect sufficient.<br><br><u>Jay v. Zimmerman Co.</u>, 327 F.Supp. 1198, 1204 (E.D. Mo. 1971) ("A party has notice of a fact when he has actual |

| | | |
|---|---|---|
| | 400.2-313. And the comments to that section of the U.C.C. reveal that the concept of reliance as required in pre-U.C.C. warranty cases was purposefully abandoned."). | knowledge of it. Section 400.1-201(25) of the Uniform Commercial Code. The purpose of a notice in the context of this section (Cf. the definition of 'notice' in Section 400.1-201(26)) is to inform the seller of matters which would not normally come to the buyer's attention until after the goods came into his possession. The legislative intent was to make provision with respect to the effect of acceptance of allegedly defective or inferior goods or those allegedly not meeting warranted standards of quality. In that situation it is reasonable to require the buyer to inform the seller of the existence of a possible factual dispute relating to matters of which the buyer presumably was not aware prior to his acceptance of a tender of the goods." |
| **(19) Nebraska** | **NO**.<br><br>Hawkins Constr. Co. v. Matthews Co., 209 N.W.2d 643, 655 (Neb. 1973), rev'd on other grounds, 332 N.W.2d 39 (1983) ("Comment 3 to section 2-313(1), U.C.C., states with reference to the basis of the bargain that, 'no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof."). | **NO**, unnecessary where notice would not minimize liability.<br><br>Fitl v. Strek, 690 N.W.2d 605, 609 (Neb. 2005) ("However, even if [the plaintiff] had learned immediately upon taking possession of the[goods] that it was not authentic and had notified [the defendant] at that time, there is no evidence that [the defendant] could have made any adjustment or taken any action that would have minimized his liability. In its altered condition, the [goods] was worthless.") . |
| **(20) New Jersey** | **NO**.<br><br>Gladden v. Cadillac Motor Car Div., 416 A.2d 394, 402 (N.J. 1980) ("The purchaser of a mass-produced consumer article with a standard warranty form or booklet, as in this case, has no opportunity to bargain over its terms. Warranties are prepared unilaterally by the company and distributed automatically with the product on a mass basis. The consumer must ordinarily place considerable reliance upon the | **NO**, lawsuit suffices.<br><br>Boyes v. Greenwich Boat Works, Inc., 27 F.Supp.2d 543, 552 (D. N.J. 1998) ("While the plaintiffs claim that all of the defendants were aware of the problems, even if the plaintiffs failed to complain with a "reasonable time," the defendants have not alleged any prejudice from such delay.") |

- 34 -

| | | |
|---|---|---|
| | fairness and good faith of the manufacturer and its dealers. It has therefore been recognized that the reliance which a consumer necessarily reposes in a seller engenders a corresponding responsibility on the sellers. This is especially true where the product, upon failure even in normal use, presents a serious risk of personal injury or property damage."). | |
| **(21) New York** | **NO**.<br><br>CBS Inc. v. Ziff-Davis Pub. Co., 553 N.E.2d 997, 1000-01 (N.Y. 1990) ("This view of 'reliance'--i.e., as requiring no more than reliance on the express warranty as being a part of the bargain between the parties--reflects the prevailing perception of an action for breach of express warranty as one that is no longer grounded in tort, but essentially in contract."). | **NO**, lawsuit suffices.<br><br>Panda Capital Corp. v. Kopo Intern., Inc., 242 A.D.2d 690, 692 (N.Y. A.D. 1997) ("[T]he complaint and subsequent amended complaint in this action themselves constituted such notice….") |
| **(22) North Carolina** | **NO.**<br><br>N.C. Gen. Stat. § 25-2-313 cmmt. 3 ("In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement." ). | **NO**, lawsuit suffices.<br><br>Maybank v. S. S. Kresge Co., 273 S.E.2d 681, 685 (N.C. 1981) ("When the plaintiff is a lay consumer and notification is given to the defendant by the filing of an action within the period of the statute of limitations, and when the applicable policies behind the notice requirement have been fulfilled, we hold that the plaintiff is entitled to go to the jury on the issue of seasonable notice."). |
| **(23) Ohio** | **NO.**<br><br>Norcold, Inc. v. Gateway Supply Co. 798 N.E.2d 618, 624 (Ohio Ct. App. 2003) ("[R]eliance is not an element in a claim for breach of an express written warranty."). | **NO**, lawsuit suffices.<br><br>Chmtrol Adhesives, Inc. v. Am. Mfrs. Mut. ins. Co., 537 N.E.2d 624 , 638 (Ohio 1989) ("[I]n a proper case the filing of a civil complaint could serve as notice of breach.") |
| **(24) Oklahoma** | **NO**.<br><br>Collins Radio Co. of Dallas, Tex. v. | **NO,** unnecessary for latent defects.<br><br>Quaker Alloy Casting Co. v. Gulfco |

| | | |
|---|---|---|
| | *Bell*, 623 P.2d 1039, 1053 (Okla. Ct. App. 1980) ("The U. C. C. does not require a buyer to prove that he relied on the assertions constituting a warranty when the warranty is express (s 2-313, comment 3) or is an implied warranty of merchantability (s 2-314).").  | *Industries, Inc.*, 686 F. Supp. 1319, 1341 (N.D. Ill. 1988) (construing Oklahoma law) ("And of course once [the plaintiff] has established a material fact issue as to the nondiscoverability of the latent defects, notice to [the defendant] by claims made during this suit must by definition be timely."). |
| **(25) Pennsylvania** | **NO**. <br><br> *Sessa v. Riegle*, 427 F.Supp. 760, 766 (E.D.Pa. 1977) ("'[The basis of the bargain requirement] is essentially a reliance requirement and is inextricably intertwined with the initial determination as to whether given language may constitute an express warranty since affirmations, promises and descriptions tend to become part of the basis of the bargain. It was the intention of the drafters of the U.C.C. not to require a strong showing of reliance. In fact, they envisioned that all statements of the seller became part of the basis of the bargain unless clear affirmative proof is shown to the contrary."). | **NO**, lawsuit suffices. <br><br> *Bednarski v. Hideout Homes & Realty, Inc.*, 709 F. Supp. 90, 94 (M.D. Pa. 1988) ("[T]his court concludes that the filing of a civil complaint satisfies the requirement of providing breach of warranty notice under section 2607. As there is no indication that the Pennsylvania Supreme Court would rule otherwise, defendant's argument regarding the sufficiency of the notice will not be accepted.") (applying Pennsylvania law) <br><br> **NO,** unnecessary if lack of notice causes no prejudice to seller. *In Re Latex Gloves Prods. Liab. Lit.*, 134 F.Supp.2d 415, 422-23 (E.D. Pa. 2001). |
| **(26) Vermont** | **NO**. <br><br> Vt. Stat. Ann. 9A § 2-313 cmmt 3 ("In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement."). | **NO**, lawsuit suffices. <br><br> *Agway, Inc. v. Teitscheid*, 472 A.2d 1250, 1253 (Vt. 1984) ("The serving of a complaint for breach of warranty, properly timed, might in some cases constitute notice of revocation.") |
| **(27) Virginia** | **NO**. <br><br> *Daughtrey v. Ashe*,413 S.E.2d 336, 338 (1992) ("In our opinion, the "part of the basis of the bargain" language of Code § 8.2-313(1)(b) does not establish a buyer's reliance requirement. Instead, this language | **NO**, lawsuit suffices. <br><br> *Board of Directors of Bay Point Condominium Ass'n, Inc. v. RML Corp.*, 2002 WL 31236310, *18 (Va.Cir.Ct. 2002) ("In the instant case, Defendants argue that RML failed to give them notice of the breach of |

| | | |
|---|---|---|
| | makes a seller's description of the goods that is not his mere opinion a representation that defines his obligation."). | warranty claims. From Defendants' argument it appears they assert that RML failed to give them notice of the cross- and third-party breach of warranty claims prior to the filing of the instant matter. Unlike Begley, the time lapse in the instant case was one to three months. This Court determines that this delay in no way prejudiced the Defendants."). |
| **(28) West Virginia** | **NO.**<br><br>W.Va. Code § 46-313 cmmt 3. ("In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement."). | **NO,** unnecessary where purpose of notice are not served.<br><br>Hill v. Joseph T. Ryerson & Son, Inc., 268 S.E.2d 296, 302 (W.Va. 1980) ("The primary purpose of this Code provision is to prevent a buyer from accepting goods and later refusing to pay for them on the basis of an alleged breach of contract."). |
| **(29) Wisconsin** | **NO.**<br><br>Wis. Stat. § 402.313 cmmt 3 ("In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof."). | **NO**, unnecessary for latent defects:<br><br>Waupaca Electric Light and Railway Co. v. Milwaukee Electric Railway & Light Co., 88 N.W. 308, 309 (Wis. 1901) (The general rule requiring notice applies only to defects "which are discoverable by a person of ordinary intelligence in the circumstances of the purchaser, by the exercise of ordinary care." Where latent defects are concerned, "the vendee may, without returning or offering to return the article purchased, and without notifying the vendor of its defects, bring his action for damages[.]"). |
| **(30) District of Columbia** | **NO.**<br><br>DC ST § 28:2-313 cmmt. 3 ("In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement. | **NO**, unnecessary where seller willfully fails to disclose the defect.<br><br>Witherspoon v. Philip Morris Inc., 964 F.Supp. 455 (D.D.C. 1997) (under District of Columbia's UCC statute, "when a seller willfully fails to disclose a defect, failure to notify cannot be raised as a defense."). |

| | Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof." | |

The following jurisdictions are in agreement with the above subclass insofar as they too concluded that reliance is not required to maintain a breach of warranty claim. However, the highest courts of these jurisdictions have yet to determine whether pre-litigation notice is necessary:

- **(31) Delaware**, as to no reliance, <u>see</u> <u>Bell Sports, Inc. v. Yarusso</u>, 759 A.2d 582, 592 (Del. Supr. 2000) ("In actual practice affirmations of fact made by a seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement." (quoting Del. Code Ann. tit. 6 § 2-313 cmt. 3)); <u>Pack & Process, Inc. v. Celotex Corp.</u> 503 A.2d 646, 659 (Del. Super., 1985) ("Proof of reliance, however, is not necessary to create an express warranty.").[13]

- **(32) Florida**, as to no reliance, <u>see</u> <u>Carter Hawley Hale Stores, Inc. v. Conley</u>, 372 So.2d 965, 968 (Fla. Ct. App., 1979) ("[A]ll affirmations made by the seller are presumed a part of the basis for the bargain unless proven otherwise…. (N)o particular reliance on such statements need to be shown in order to weave them into the fabric of the agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof.").[14]

- **(33) Michigan**, as to no reliance, <u>see</u> Mich. Comp. Laws § 440.2313 cmt. 3 ("No specific intention to make a warranty is necessary if any of these factors is made part of the basis of the bargain. In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those

---

[13] As to notice of a defect, Delaware courts have recognized this is an open question. <u>See</u> <u>Smith v. DaimlerChrysler Corp.</u>, No. Civ. A. 94C-12-002JEB, 2002 WL 31814534, at *4 (Del. Duper. Ct. Nov. 20, 2002) ("Delaware courts have not ruled on the question of whether the filing of a lawsuit meets the notice requirements of § 2-607.").

[14] As to notice of a defect, Florida's intermediate appellate courts suggest that notice must be given pre-suit. <u>See</u> <u>Dunham-Bush, Inc. v. Thermo-Air Service, Inc.</u>, 351 So.2d 351, 353 (Fla. Ct. App. 1977) ("In order to properly plead a cause of action for breach of warranties under the Florida Uniform Commercial Code a complaint should contain at least the following allegations… Notice to seller of breach.").

goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement.").

- **(34) Mississippi**, as to no reliance, see Miss. Code Ann. § 75-2-313 cmt. 3 ("No specific intention to make a warranty is necessary if any of these factors is made part of the basis of the bargain. In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement.").

- **(35) New Hampshire**, as to no reliance, see Kelleher v. Lumber, 891 A.2d 477, 501 (N.H. 2005) ("In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof. The issue normally is one of fact.").

- **(36) North Dakota,** as to no reliance, see Hagert v. Hatton Commodities, Inc., 384 N.W.2d 654, 657 (N.D. 1986) ("A party alleging a breach of warranty has the burden of establishing the existence of a warranty, a breach of warranty, and that the breach of warranty proximately caused the damages alleged.").

- **(37) Tennessee**, as to no reliance, see T. C. A. § 47-2-313 cmmt. 3 ("In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement.").

- **(38) Texas**, as to no reliance, see Sweco, Inc. v. Continental Sulfur & Chemical 808 S.W.2d 112 (Tex.Ct.App. 1991) ("Unlike the cause of action for false representations, there is no specific element that a representation be made with the intention that it should be acted upon by the other party. Instead, there is a requirement that the affirmation of fact or promise became a part of the basis of the bargain.").[15]

This Court should determine that these jurisdictions will follow the majority rule that

prelitigation notice is not necessary to maintain a breach of warranty claim, particularly

---

[15] As to notice of a defect, Texas intermediate appellate courts have held that notice must be given pre-suit. See U.S. Tire-Tech, Inc. v. Boeran, B.V., 110 S.W.3d 194, 202 (Tex. Ct. App. 2003) (summons and complaint not enough to establish notice).

where consumers are confronted with a standardized, unbargained-for warranty that is breached by a latent defect. This Court should do so for the following reasons.

First, the notice issue revolves around the language in Uniform Commercial Code § 2-607(3)(a), which all of these jurisdictions have adopted,[16] but that language does not support the conclusion that notice must be given "pre-suit." Smith, 667 P.2d at 363. Section 2-607(3)(a) states:

> Where a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered breach notify the seller of breach **or be barred from any remedy**…. (Emphasis added.)

Clearly, the language of the section only says that notice has to be given before the buyer has a "remedy." The language does not say that notice must be given before the buyer commences a lawsuit. Plainly, a lawsuit is a vehicle to a remedy, it is not a remedy unto itself. Further, consider that conspicuously absent from all comments to this section is any indication that the notice must be provided "pre-suit." See, generally, UCC § 2-607 cmmts.

Second, it must be remembered that this is a consumer class action. The comments to § 2-607(3)(a) confirm that consumers benefit from a noticeably relaxed interpretation of the notice requirement. Comment 4 states:

> The time of notification is to be determined by applying commercial standards to a merchant buyer. "A reasonable time" for notification from a retail consumer is to be judged by different standards so that in his case it will be extended, **for the rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy**.

---

[16] See **Delaware**, Del. Code Ann. tit. 6 § 2-607; **Florida**, F.S.A. § 672.607; **Michigan**, M.C.L.A. 440.2607; **Mississippi**, Miss. Code Ann. § 75-2-607; **New Hampshire**, N.H. Rev. Stat. § 382-A:2-607; **North Dakota**, ND ST 41-02-70; **Tennessee**, T. C. A. § 47-2-607; **Texas**, V.T.C.A., Bus. & C. § 2.607.

UCC § 2-607 cmmt. 4 (emphasis added). It makes no sense to bar good faith consumers from their remedy for failing to comply with a "pre-suit" notice when this requirement does not itself appear in § 2-607(e)(a)

Third, aside from the fact that there is no textual support in § 2-607(3)(a) for pre-suit notice, a pre-suit notice requirement is unsound, since there are no parameters in § 2-607(3)(a) regarding how long before suit is filled notice must given. Nothing in § 2-607 prescribes a "waiting period" for commencing a lawsuit after notice is given, so, conceivably, the requisite notice could be given a single second before a lawsuit is commenced. What is the purpose of pre-suit notice if the lawsuit could be filed the moment after such notice was given? This simply highlights the absurdity of transposing a "pre-suit" notice requirement onto § 2-607(3)(a). See Mullins, 887 S.W.2d at 358 ("[A]n opportunity for pre-litigation settlement is simply insufficient to justify holding claims for breach of warranty without pre-litigation notice to be barred, particularly when proponents of the requirement acknowledge that it could be met by a mere telephone call immediately before the suit is filed.").

Fourth, it is often said that the purposes of pre-suit notice are twofold:

> First, express notice opens the way for settlement through negotiation between the parties. Second, proper notice minimizes the possibility of prejudice to the seller by giving him ample opportunity to cure the defect, inspect the goods, investigate the claim or do whatever may be necessary to properly defend himself or minimize his damages while the facts are fresh in the minds of the parties.

Walmart Stores, 586 S.E.2d at 86. However, the filing of a lawsuit without giving previous notice does not defeat these purposes. First, a lawsuit does not foreclose negotiation between parties. Second, Hurd cannot credibly claim it has been "prejudiced" by the failure

to give notice pre-suit, since Hurd itself has been targeted repeatedly for its breach of warranty (and fraud). Simply put, Hurd has had actual notice of its defective insulated glass products for some time, and it is the party in the best position to understand the extent of its deceit, rendering prejudice a non-issue.

Fifth, and finally, the alleged defect here is latent. There is a very real probability that the vast majority of class members have absolutely no idea that their windows are defective. As noted above, the inert gas that Hurd charged a premium for is invisible, odorless, colorless, and tasteless. Requiring individuals to give notice when they do not even know they have a defect heralds form over substance.

For these reasons, this Court should conclude that the highest courts in the jurisdictions listed above will conclude that notice of a defect need not be given presuit. As such, these jurisdictions can properly be considered in Subclass #4, making that subclass by far the largest, which simply underscores how manageability problems evaporate even with subclasses.

> **2.      A Class Action Is Superior Because It Is The Most Efficient Method To Resolve The Claims.**

Regardless of whether this Court certifies a nationwide class under Wisconsin law or carves the proposed class into the four subclasses above, litigating plaintiffs' claims as a class action is superior to any other form of adjudication. The class is so numerous that joinder would be highly impracticable (if not impossible). With potentially thousands of class members, it would be extremely inefficient, if not cost prohibitive, to litigate each class member's claims separately. Moreover, individual trials would leave both plaintiffs and defendants vulnerable to inconsistent judgments. Certifying a class in this action will also

- 42 -

undoubtedly conserve judicial resources.

Finally, there will be no difficulties in the management of this case as a class action. As demonstrated above, the proposed class is governed entirely by Wisconsin law, or, alternatively, can be managed by creating four simple subclasses. Through either means, the lawsuits challenging defendants' wrongdoing will be adjudicated uniformly by this Court. This Court is the ideal forum for resolving this controversy because, among other things, the defendant is domiciled in Wisconsin, and all of the wrongful acts took place in this district within this state. A class action is thus superior to other possible methods for the expeditious and efficient adjudication of this controversy. This Court should certify the thirty-eight jurisdiction class.

## II. ALTERNATIVELY, THIS COURT SHOULD CERTIFY A WISCONSIN ONLY CLASS.

Finally, at the barest of minimums, if the above analyses pose insurmountable manageability problems, then this Court should certify a Wisconsin-only class—a class representing nearly 20% of all claims in the presently proposed thirty-eight-jurisdiction class. This would cause the Court to lose jurisdiction over this action, requiring a remand to the Milwaukee County Circuit Court for further proceedings. See 28 U.S.C. §§ 1332(d)(4) and 1447(c).

## CONCLUSION

To not grant certification in this matter would not only allow a manufacturer to escape its obligations under its own express warranty, it would also reward the same manufacturer for charging a premium to consumers for products that literally dissipate into thin air. Many consumers may not yet know that their inert-gas filled products are defective,

and those that do are likely daunted at the prospect of pursuing a Goliath manufacturer with costly and timely litigation, with the prospects of recovery being modest (at best). While warranty law is the tool to right the defendants' wrong, this class action is the mechanism for delivery. Cheated consumers are entitled to no less. This Court should certify this thirty-eight jurisdiction class action.

Dated at Brookfield, Wisconsin this 15th day of June, 2007.

**CANNON & DUNPHY, S.C.**
Attorneys for Plaintiffs

By: _____/s/Mark L. Thomsen_____
Mark L. Thomsen, State Bar No. 01018839
Brett A. Eckstein, State Bar No. 01036964

**P.O. ADDRESS**:
595 North Barker Road
P.O. Box 1750
Brookfield, WI 53008-1750
Telephone: (262) 796-3703
Facsimile: (262) 796-3713
mthomsen@cannon-dunphy.com

**O'NEIL, CANNON, HOLLMAN, DEJONG, S.C.**
Attorneys for Plaintiffs

By: _____/s/Patrick G. McBride_____
William A. Wiseman, State Bar No. 1015696
Patrick G. McBride, State Bar No. 1024920
Kerry E. Dwyer, State Bar No. 1023960

Chase Tower, Suite 1400
111 East Wisconsin Avenue
Milwaukee, WI 53202-4870
Telephone: (414) 276-5000
Facsimile: (414) 276-6581
Bill.Wiseman@wilaw.com
Patrick.Mcbride@wilaw.com
Kerry.Dwyer@wilaw.com

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2007, I electronically filed the documents listed below using the ECF System:

1.    Brief In Support Of Plaintiff's Motion For Class Certification

2.    Affidavit of Mark L. Thomsen.

3.    Affidavit of Patrick G. McBride.

The ECF System will send notification of such filing to the persons listed below:

> W. Stuart Parsons
> Mark A. Kircher
> Kelly Twigger
> Joshua D. Maggard
> Quarles & Brady
> 411 East Wisconsin Avenue
> Milwaukee, WI  53202-4497

> John L. Kirtley
> Karen A. Waple
> Attorneys for Defendant UIS, Inc.
> Godfrey & Kahn, S.C.
> 780 North Water Street
> Milwaukee, WI 53202-3590

I also served the following (non-ECF participants) counsel with copies via U.S. mail on June 15, 2007:

> Robert J. Ginifra, Jr.
> SULLIVAN & CROMWELL LLP
> 125 Broad Street
> New York, NY 10004

> Thomas D. Cochran

Timothy M. Lawlor
WITHERSPOON, KELLEY,
DAVENPORT & TOOLE, P.S.
422 W. Riverside Ave., Ste. 1100
Spokane, WA 99201

Dated at Brookfield, Wisconsin, this 15th day of June, 2006.

**CANNON & DUNPHY, S.C.**
Attorneys for Plaintiffs


By: _____/s/Brett A. Eckstein_____
Mark L. Thomsen, State Bar No. 01018839
Brett A. Eckstein, State Bar No. 01036964

**P.O. ADDRESS**:
595 North Barker Road
P.O. Box 1750
Brookfield, WI  53008-1750
Telephone:     (262) 796-3703
Facsimile:      (262) 796-3713